UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

JO FERRIS

               Plaintiff,

        v.                                **REPORT AND RECOMMENDATION**
                                                  05-CV-0350 (NPM)

MICHAEL J. ASTRUE,[1]
COMMISSIONER OF SOCIAL SECURITY,

               Defendant,

## I.    Introduction

Plaintiff Jo Ferris brings this action pursuant to the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g), 1383(c)(3), seeking review of a final decision of the Commissioner of Social Security ("Commissioner"), denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").[2] Specifically, Plaintiff alleges that the decision of the Administrative Law Judge ("ALJ") was not supported by substantial evidence and contrary to the applicable legal standards. The Commissioner argues that the decision was supported by substantial evidence and made in accordance with the correct legal standards.

For the reasons set forth below, the Court finds that the Commissioner's decision contains legal error and is not supported by substantial evidence. Therefore, the Court recommends that Plaintiff's Motion for Judgment on the Pleadings be granted in part

---

[1] On February 12, 2007, Michael J. Astrue was sworn in as the Commissioner of the Social Security Administration. Pursuant to Federal Rules of Civil Procedure 25(d)(1), he is automatically substituted for former Commissioner Jo Anne Barnhart as the defendant in this action.

[2] This case was referred to the undersigned for Report and Recommendation, by the Honorable Norman A. Mordue, pursuant 28 U.S.C. § 636(b)(1)(B), by an Order dated July 1, 2009.

and Defendant's Cross-Motion for Judgment on the Pleadings be denied.[3]

## II. Background

Plaintiff applied for SSI on March 25, 1996, alleging an onset date of November 1, 1988 (R. at 29, 75-76).[4] Her application was denied initially on August 7, 1996 (R. at 29). Plaintiff filed a request for a hearing on May 27, 1997 (R. at 38). On June 26, 1998, Plaintiff appeared before the ALJ (R. at 571). The ALJ considered the case *de novo* and, on September 25, 1998, issued a decision finding Plaintiff not disabled (R. at 52-57). Plaintiff requested review by the Appeals Council on November 20, 1998 (R. at 61).

On September 12, 2002, while waiting on a response from the Appeals Council, Plaintiff filed applications for both SSI and DIB alleging on onset date of March 1, 2002 (R. at 24, 520). On January 1, 2003, the Appeals Council, in response to Plaintiff's appeal for her first SSI application, remanded to the ALJ "because the record on which the [ALJ] based his decision could not be located" (R. at 64). Plaintiff's second applications were consolidated with her first application for SSI and escalated to the hearings level (R. at 14). On July 22, 2003, Plaintiff appeared before the ALJ (R. at 595). The ALJ issued a decision on September 16, 2003, finding Plaintiff not disabled (R. at 14-23). The ALJ's decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review on January 13, 2005 (R. at 3-7). On March 18, 2005, Plaintiff filed this action. Plaintiff alleges disability due to various musculoskeletal impairments resulting from a motor vehicle accident,

---

[3] Although no motion for judgment on the pleadings was filed, the moving party was excused from such filing under General Order No. 18, which states in part: "The Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings . . . ." General Order No. 18. (N.D.N.Y. Sept. 12, 2003).
[4] Citations to the underlying administrative record are designated as "R."

2

fibromyalgia, diabetes, asthma, vision impairments, depression, and mental impairments.

Based on the entire record, the Court recommends remand because the ALJ erred in assessing Plaintiff's credibility and because the RFC is not supported by substantial evidence.

### III.     Discussion

#### A.     Legal Standard and Scope of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383 (c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

The Commissioner has established a five-step sequential evaluation process[5] to determine whether an individual is disabled as defined under the Act. See 20 C.F.R. §§ 416.920, 404.1520.

**B.    Analysis**

---

[5] First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.
Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. §§ 416.920, 404.1520.

1.  **The Commissioner's Decision**

In this case, the ALJ made the following findings with regard to factual information as well as the five-step process set forth above: (1) Plaintiff engaged in substantial gainful activity in 1999 and 2000 (R. at 23); (2) Plaintiff had severe impairments, including a severe mental impairment[6] (R. at 15-16); (3) Plaintiff's "severe impairments . . . d[id] not meet or equal the level of severity of any impairment listed in Appendix I, Supbart P of Regulations No. 4" (R. at 23); (4) Plaintiff's "allegations as to the frequency and severity of her symptoms and limitations are . . . not fully credible" (R. at 22); (5) Plaintiff had the ability to

> sit, stand and walk for six hours per day each, lift and carry ten pounds frequently and 20 pounds occasionally, and perform postural activities. She can use her hands to perform work-related activities such as grasping, manipulating, and handling. She cannot perform complex tasks due to her mental impairments, but she can perform mental work-related activities to a degree commensurate with the performance of simple or even detailed tasks

(R. at 22); (6) Plaintiff had past relevant work as a cashier (R. at 22); (7) based on the Dictionary of Occupational Titles ("DOT"), Plaintiff has the ability to perform her past work as a cashier (R. at 22). Ultimately, the ALJ found that Plaintiff was not under a disability at any time through the date of his decision (R. at 23).

2.  **Plaintiff's Claims:**

Plaintiff argues that the ALJ's decision is contrary to the applicable legal

---

[6] The ALJ specifically found that Plaintiff's mental impairment was severe, but failed to make a finding as to whether Plaintiff had any severe physical impairments (R. at 15, 16). Instead, the ALJ noted that Plaintiff's history included treatment for diabetes mellitus, musculoskeletal pain, fibromyalgia, myofascial pain, and asthma (R. at 15). It is therefore unclear what impairments the ALJ found to be severe. The ALJ also failed to state which of Plaintiff's mental impairments he found severe. Plaintiff's medical history indicates that she was repeatedly diagnosed with depression (R. at 508, 391, 404); but had also been diagnosed with dysthymia (R. at 496); a relational problem (R. at 287, 304); a cognitive disorder secondary to traumatic brain injury (R. at 776, 781); a personality disorder secondary to traumatic brain injury (R. at 776, 781); and a mood disorder secondary to traumatic brain injury (R. at 776.781).

5

standards and not supported by substantial evidence. Specifically, Plaintiff argues that a) the ALJ failed to appropriately consider Plaintiff's fibromyalgia in his credibility analysis; b) the ALJ's RFC finding is not supported by substantial evidence; and c) the ALJ failed to consider Plaintiff's impairments in combination. Plaintiff appears to make no claim that her impairments meet or equal the level of severity of any disabling condition in the listings.  20 C.F.R. Part 404 Subpart P, Appendix 1.

### a) The ALJ Failed to Appropriately Consider Plaintiff's Fibromyalgia

Plaintiff argues that the ALJ failed to appropriately consider the limitations resulting from her fibromyalgia when considering her subjective complaints of pain in conducting a credibility analysis. Plaintiff's Brief, pp. 19-22.

"[A] claimant's subjective evidence of pain is entitled to great weight where . . . it is supported by objective medical evidence." Simmons v. U.S. R.R. Retirement Bd., 982 F.2d 49, 56 (2d Cir. 1992) (citations omitted). "However, the ALJ is 'not obliged to accept without question the credibility of such subjective evidence.'" Martone v. Apfel, 70 F.Supp.2d 145, 151 (N.D.N.Y. 1999) (quoting Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979)). In analyzing credibility, the ALJ must first determine whether the claimant has medically determinable impairments, "which could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. § 404.1529(a); S.S.R. 96-7p, 1996 WL 374186, at *2. Second, if medically determinable impairments are shown, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity to work. S.S.R. 96-7p, 1996 WL 374186, at *2; 20 C.F.R. § 404.1529(c); Borush, 2008 WL 4186510, at *12.

Because "an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone," S.S.R. 96-7p, 1996 WL 374186, at *3, an ALJ will consider the factors listed in the regulations.[7] 20 C.F.R. §§ 416.929(c)(3)(i)-(vii).

If the ALJ finds Plaintiff's pain contentions are not credible, he must state his reasons "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." Young v. Astrue, 2008 WL 4518992, at *11 (N.D.N.Y. Sept. 30, 2008) (quoting Brandon v. Bowen, 666 F.Supp 604, 608 (S.D.N.Y. 1987)).

Here, the ALJ found that Plaintiff's "allegations as to the frequency and severity of her symptoms and limitations are contradicted by numerous factors and are not fully credible" (R. at 22). However, the ALJ failed to make the necessary findings at either the first or second steps of the two-step credibility analysis. The ALJ's failure is error and warrants remand. See Crysler v. Astrue, 563 F.Supp.2d 418, 441 (N.D.N.Y. 2008) (remanding, in part because the ALJ failed to "state in his decision whether plaintiff's medical impairments could reasonably be expected to produce the pain or other symptoms alleged"); Hogan v. Astrue, 491 F.Supp.2d 347, 352-353 (W.D.N.Y. 2007) (remanding, in part, because the ALJ failed to find whether plaintiff's impairments "could reasonably be expected to produce the pain . . . she alleged" despite noting that the ALJ "carefully review[ed]" the seven factors set forth in 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii)

---

[7] The listed factors are: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms. 20 C.F.R. §§ 416.929(c)(3)(i)-(vii).

and 416.929(c)(3)(i)-(vii)).

Moreover, the ALJ's error at step two of the analysis is further compounded by his failure to appropriately consider Plaintiff's fibromyalgia. "In fibromyalgia cases, the credibility of the claimant's testimony regarding her symptoms takes on substantially increased significance in the ALJ's evaluation of the evidence." Coyle v. Apfel, 66 F.Supp.2d 368, 376 (N.D.N.Y. 1999) (internal quotations omitted). This is true because, "[i]n stark contrast to the unremitting pain of which [fibromyalgia] patients complain, physical examinations will usually yield normal results-a full range of motion, no joint swelling, as well as normal muscle strength and neurological reactions." Preston v. Sec'y of Health & Human Servs., 854 F.2d 815, 817-18 (6th Cir. 1988).The Seventh Circuit has described fibromyalgia as follows:

> [F]ibromyalgia, also known as fibrositis [is] a common, but elusive and mysterious, disease, much like chronic fatigue syndrome, with which it shares a number of features. Its cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective. There are no laboratory tests for the presence or severity of fibromyalgia. The principal symptoms are "pain all over," fatigue, disturbed sleep, stiffness, and-the only symptom that discriminates between it and other diseases of a rheumatic character-multiple tender spots, more precisely 18 fixed locations on the body (and the rule of thumb is that the patient must have at least 11 of them to be diagnosed as having fibromyalgia) that when pressed firmly cause the patient to flinch.

Sarchet v. Chater, 78 F.3d 305, 305-06 (7th Cir. 1996) (internal citations omitted). The Second Circuit has also "recognized that fibromyalgia is a disabling impairment and that there are no objective tests which can conclusively confirm the disease." Green-Younger v. Barnhart, 335 F.3d 99, 108 (2d Cir. 2003) (quoting Preston v. Sec. of Health & Human Servs., 854 F.2d 815, 818 (6th Cir. 1988)).

Here, it is unclear from the ALJ's decision how he considered Plaintiff's fibromyalgia. Although the ALJ found that Plaintiff had severe impairments, he did not articulate which, if any, of Plaintiff's physical impairments he found to be severe (R. at 15). In his analysis at step two, the ALJ simply noted that Plaintiff had been diagnosed with and treated for several physical impairments, including fibromyalgia. Id. Plaintiff's mental impairment was the only impairment that the ALJ specifically found to be severe (R. at 16). Thus, although unclear, the ALJ's decision suggests that he did not find Plaintiff's fibromyalgia severe and determined Plaintiff's mental impairment to be the only severe impairment.

The ALJ's decision also suggests he questioned the validity of the diagnosis of fibromyalgia. For example, the ALJ repeatedly noted that the record failed to contain any evidence of "the trigger points which are often associated with [fibromyalgia]" (R. at 18, 19, 21). However, the Court was able to locate several references to trigger points, although Plaintiff's medical sources did not use those exact terms. For example, on March 16, 1999, David Pronto, Dr. Gordon's[8] physician's assistant, noted that Plaintiff "continues to have pains in her knees, legs, upper back, arms and shoulders as well as across the small of her back. It is tender to palpation[9] almost everywhere" (R. at 396). On November 15, 1999, Mr. Pronto noted that "[t]he upper back, although tender to palpation[,] is not terribly spasmed" (R. at 394). On May 9, 2001, Dr. Gordon found that

---

[8] Dr. Gordon and Mr. Pronto treated Plaintiff for fibromyalgia and pain at the Pain Management Clinic of Glens Falls Hospital (R. at 396).

[9] Palpation is "the act of feeling with the hand; the application of the fingers with light pressure to the surface of the body for the purpose of determining the consistency of the parts beneath in physical diagnosis." *Dorland's Illustrated Medical Dictionary*, 1386 (31st ed. 2007). Palpation is employed to locate trigger points in diagnosing fibromyalgia. See Crysler v. Astrue, 563 F.Supp.2d 418, 441 (N.D.N.Y. 2008) (quoting Sarchet v. Chater, 78 F.3d 305, 306-07 (7th Cir. 1996)) (there are "specific locations [on the body] that if *palpated* will cause the patient who really has fibromyalgia to flinch") (emphasis added).

"[t]he muscles of the left side of the neck are tender to palpation. The right quadriceps are somewhat tender over the mid point of the vastus lateralis" (R. at 389). Plaintiff underwent a consultative physical examination on January 28, 2003, with Dr. Kerlinsky, at the request of the Social Security Administration ("SSA") (R. at 783-86). At that time, Dr. Kerlinsky found the following "[f]ibromyalgia tender points: . . . bilateral occipital, trapezius, scapular, greater trochoanter, and gluteal tender points" (R. at 785). Thus, the record documents numerous references to trigger, or tender, points.

Moreover, the ALJ repeatedly discussed Plaintiff's fibromyalgia in conjunction with her musculoskeletal impairments, suggesting he believed the two impairments to be related. In this discussion of Plaintiff's fibromyalgia and musculoskeletal impairments, the ALJ frequently noted that many of Plaintiff's diagnostic tests were normal. For example, the ALJ found that Plaintiff "often had a good range of motion in each of the tested joints" (R. at 19) and "X-rays revealed minimal changes or were normal" (R. at 21). The ALJ appears to have discounted many of Plaintiff's alleged physical limitations because of "the minimal abnormalities on the performance of x-rays and the limited clinical abnormalities with regard to her physical impairments" (R. at 22). Again, these statements suggest that the ALJ questioned the validity of Plaintiff's fibromyalgia.

However, contrary to the ALJ's analysis, and as previously stated, a lack of clinical and diagnostic techniques does not detract from the diagnosis of fibromyalgia. Indeed, "negative findings in the medical records 'simply confirm a diagnosis of fibromyalgia by a process of exclusion, eliminating other medical conditions which may

10

manifest fibrositis-like symptoms of musculoskeletal pain, stiffness, and fatigue.'" Crysler, 563 F.Supp.2d at 441 (quoting Green-Younger, 335 F.3d at 109).

The Court could also not locate any indication in the record from Plaintiff's treating sources that they questioned her fibromyalgia diagnosis. Most notably, Plaintiff was treated by Mr. Pronto and Dr. Gordon at the Pain Management Clinic of Glens Falls Hospital specifically for fibromyalgia and pain management (R. at 394, 396). There, Plaintiff attended a fibromyalgia and pain support group (R. at 396, 370-81).

Based on the foregoing, the Court recommends remand to allow the ALJ an opportunity to appropriately consider Plaintiff's credibility regarding her complaints of pain and to further consider evidence of her fibromyalgia.

### b) The RFC is Not Supported by Substantial Evidence

Plaintiff argues that the RFC is not supported by substantial evidence. Plaintiff's Brief, pp. 22-23, 23-24, 24-25.

An individual's "residual functional capacity is the most you can still do despite your limitations." 20 C.F.R. § 404.1545(a)(1). In order to determine a claimant's RFC, the ALJ must assess "all of the relevant medical and other evidence." § 404.1545(a)(3). Also, the ALJ must consider the claimant's "ability to meet the physical, mental, sensory, and other requirements of work . . . ." "on a regular and continuing basis." §§ 404.1545(a)(4), (b). Regular and continuing basis is defined as "8 hours a day, for five days a week, or an equivalent work schedule." SSR 96-8p, 1996 WL 374184, at *1. The ALJ found that Plaintiff retained the ability to

> sit, stand and walk for six hours per day each, lift and carry ten pounds frequently and 20 pounds occasionally, and perform postural activities. She can use her hands to perform work-related activities such as

> grasping, manipulating, and handling. She cannot perform complex tasks due to her mental impairments, but she can perform mental work-related activities to a degree commensurate with the performance of simple or even detailed tasks

(R. at 22). The Court finds this determination flawed for several reasons.

First, as discussed more fully above, the ALJ erred in failing to find Plaintiff's fibromyalgia to be a severe impairment. He did this based on an apparent lack of objective medical evidence supporting that diagnosis. Because of this error, the ALJ failed to include any limitations resulting from her fibromyalgia.

Second, the exertional portion of the RFC is not supported by substantial evidence. The ALJ began his analysis of Plaintiff's physical impairments by discussing the exertional opinions proffered by Plaintiff's treating sources, Dr. Noonan,[10] Dr. Gordon, and physician's assistant David Pronto, as well as the SSA consultative examiners, Dr. Kerlinsky and Dr. Kelly (R. at 18-20). The ALJ ultimately afforded all these opinions "little weight" (R. at 19). Thus, in determining the exertional portion of the RFC, the ALJ effectively dismissed all the opinions from Plaintiff's treating and examining sources in favor of the findings from the non-examining review physician.[11] And, as discussed below, the ALJ even failed to include all the limitations found by that

---

[10] Treatment notes for Dr. Noonan date back to at least July 8, 1996 (R. at 283). Dr. Noonan treated Plaintiff for various impairments, including her musculoskeletal impairments, diabetes, and asthma (R. at 283-84).

[11] Plaintiff's medical history was reviewed by Dr. Wakely, a non-examining review physician, on May 7, 1997 (R. at 292-99). Dr. Wakely found certain exertional limitations. The ALJ appears to have adopted Dr. Wakely's findings, but whether he did so is unclear from the ALJ decision (R. at 22). Parenthetically, on February 10, 2003, a disability analyst again reviewed Plaintiff's file and found the same exertional limitations as Dr. Wakely (R. at 793-98). Although the Court assumes the ALJ was adopting Dr. Wakely's opinions concerning Plaintiff's exertional limitations, the ALJ failed to discuss Dr. Wakely's opinion or assign it any weight. This was error. See 20 C.F.R. § 404.1527(f)(2)(ii) ("Unless the treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist . . . ."). Moreover, the ALJ ignored the remainder of Dr. Wakely's opinions and without explanation failed to adopt or reject them.

physician. The Court is troubled by the ALJ's apparent disregard for Plaintiff's treating and examining sources.

The majority of the opinions concerning Plaintiff's exertional limitations were more restrictive than the ALJ's RFC, especially those opinions from Plaintiff's treating sources. For example, on May 14, 1997, Dr. Noonan stated that Plaintiff could not lift on more than ten pounds (R. at 315). On March 10, 1999, Dr. Noonan opined that Plaintiff had a moderate limitation to standing, sitting, lifting, carrying, pushing, and pulling (R. at 402). On June 11, 1999, Dr. Noonan opined that Plaintiff had a moderate limitation to walking, standing, sitting and was very limited in her ability to carry, push, and pull (R. at 441). On October 17, 2001, Mr. Pronto found that plaintiff was moderately limited in her ability to walk, stand, sit, and use her hands and was very limited in her ability to lift, carry, push, and pull (R. at 404). On July 7, 2003, Dr. Gordon opined that Plaintiff had a moderate limitation to sitting and was very limited in her ability to walk, stand, lift, carry, push, pull, or engage in strenuous activity (R. at 406). Plaintiff underwent a physical examination with Dr. Kerlinsky at the request of the SSA on January 28, 2003 (R. at 783-86). Dr. Kerlinsky found that Plaintiff "ha[d] a moderate restriction for repetitive sustained motor tasks. She may require extra rest periods during the day" (R. at 786). Based on the foregoing, the Court finds that the ALJ erred in effectively adopting Dr. Wakely's exertional findings while discounting the opinions from Plaintiff's treating and examining sources. See 20 C.F.R. § 404.1527(d)(1) ("Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you."); see also Vargas v. Sullivan, 898 F.2d 293 (2d Cir. 1990) (internal citations and quotations removed) ("The general rule is that the written reports of

13

medical advisors who have not personally examined the claimant deserve little weight in the overall evaluation of disability."); Bennett v. Astrue, 2009 WL 1035106, at *11 (N.D.N.Y. Apr. 17, 2009) (citing 20 C.F.R. § 416.927(d)(1); Pogozelski v. Barnhart, 2004 WL 1146059, at *13 (E.D.N.Y. May 19, 2004)) ("A non-examining source's opinion, including the opinions of state agency medical consultants and medical experts, will be given less weight than an examining source's opinion.").

The Court is aware that in certain situations a non-examining review physician may be given more weight than a treating or examining source. See SSR 96-6p, 1996 WL 374180 at *3 (S.S.A.) ("In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources."). However, as the ALJ failed to offer any explanation as to why he was adopting Dr. Wakely's findings, why he failed to engage in any analysis of her opinions,  or to even mention her opinions, the Court cannot find that this situation qualifies as an "appropriate circumstance" as contemplated by the SSA. SSR 96-6p, 1996 WL 374180 at *3. Moreover, the Court notes that at the time of the ALJ's decision, Dr. Wakely's opinions were more than six years old.

As for Plaintiff's non-exertional impairments, the ALJ again began by discussing the opinions from Plaintiff's treating sources, Dr. Gordon, Mr. Pronto, Dr. Noonan, Dr. Anderson-Hanley,[12] concerning Plaintiff's mental disorders and the SSA consultative examiner, Dr. Payne (R. at 20). The ALJ dismissed the opinions from Plaintiff's treating and SSA examining sources, noting that he "simply d[id] not believe that the record

---

[12] Psychologist, Cay Anderson-Hanley, treated Plaintiff at the Pain Management Clinic and appears to have run the pain support group (R. at 365, 370-81).

contains objective medical evidence to support the limitations recommended by these examiners." Id. The ALJ ultimately found that he "d[id] not believe that the claimant's ability to perform mental work-related activities is completely unimpaired, but that the opinions of Dr. Payne, Dr. Gordon and Mr. Pronto, as well as Dr. Noonan's opinion that the claimant's ability to function in a work setting at a consistent pace would be very limited, are not well supported by objective medical evidence and are entitled to little weight." Id. Thus, as with Plaintiff's exertional limitations, the ALJ effectively dismissed the opinions regarding her non-exertional mental disorder limitations from all of Plaintiff's treating and examining sources.[13]

Instead, the ALJ found the following for the non-exertional portion of Plaintiff's RFC: "[s]he cannot perform complex tasks due to her mental impairments, but she can perform mental work-related activities to a degree commensurate with the performance of simple or even detailed tasks" (R. at 22). Many of the opinions from Plaintiff's treating and examining sources were more restrictive in terms of her ability to perform certain tasks and collectively pointed to a number of limitations other than the single limitation the ALJ included in the RFC. For example, although Dr. Noonan originally found no mental limitations, on June 11, 1999, Dr. Noonan found that Plaintiff was very limited in her ability to function in a work setting at a consistent pace (R. at 402, 441). On October 17, 2001, Mr. Pronto found that Plaintiff was moderately limited in her ability to understand and remember instructions, carry out instructions, maintain attention/concentration, make simple decisions, and function in work setting at a

---

[13] The ALJ did not specifically state what weight he was granting the opinions from either Dr. Anderson-Hanley or Dr. Conroy. However, all Plaintiff's examining and treating sources, including Dr. Anderson-Hanley and Dr. Conroy, were discussed together (R. at 20). Thus, based on context, the Court assumes the ALJ was in fact assigning all the opinions he discussed "little weight." Id.

consistent pace (R. at 404). Dr. Gordon opined on July 7, 2003, that Plaintiff was moderately limited in her ability to understand and remember instructions, carry out instructions, and maintain attention/concentration (R. at 406). Dr. Gordon also found that Plaintiff was very limited in her ability to function in a work setting at a consistent pace. Id. Plaintiff underwent an organicity and psychiatric evaluation with Dr. Payne in January 2003, at the request of the SSA (R. at 778-82, 773-77). Dr. Payne opined that Plaintiff

> could follow and understand simple directions & instructions. She could perform simple rote tasks under supervision. She could consistently perform simple tasks. She would have problems with attention and concentration. She would have difficulties learning new tasks. She would have difficulties performing complex tasks & making appropriate decisions. She would have difficulties relating with others and dealing with stress. Her psychiatric and cognitive difficulties would be moderately limiting

(R. at 776, 781). Thus, many of the limitations found by Plaintiff's treating and examining sources are more restrictive than the single limitation the ALJ included in the RFC.

Because the ALJ offered no explanation, and he afforded the opinions from Plaintiff's examining sources little weight, the Court is at a loss to determine how the ALJ arrived at his assessment that "[s]he cannot perform complex tasks due to her mental impairments, but she can perform mental work-related activities to a degree commensurate with the performance of simple or even detailed tasks" (R. at 22). Notably, neither of the SSA non-examining review psychologists offered opinions concerning Plaintiff's ability to complete complex tasks (R. at 300-12, 817-834, 839). Thus, unlike the ALJ's clear adoption of the SSA non-examining review physician's

findings for Plaintiff's exertional limitations, the ALJ clearly did not adopt the findings of the non-examining review psychologists for her mental impairments. The ALJ committed error by not including a narrative explaining how he arrived at his mental RFC.  See Hogan, 491 F.Supp.2d at 354 (quoting SSR 96-8p, 1996 WL 375184, at *7 (S.S.A.)) ("It is well-settled that '[t]he RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).'"); See also White v. Sec'y of Health & Human Servs., 910 F.2d 64, 65 (2d Cir. 1990) ("[T]he failure to specify the basis for a conclusion as to residual functional capacity is reason enough to vacate a decision of the Secretary . . . .").

Finally, the ALJ failed to include any postural limitations in the RFC. Substantial evidence supports the inclusion of these restrictions. Plaintiff's postural limitations are well documented in the record. For example, on May 7, 1997, Dr. Wakely found that Plaintiff could only occasionally climb, balance, stoop, kneel, crouch, and crawl (R. at 294). On March 10, 1999, Dr. Noonan opined that Plaintiff had a moderate limitation to bending and climbing (R. at 402). On June 11, 1999, Dr. Noonan opined that Plaintiff was very limited in her ability to bend and climb (R. at 441). On October 17, 2001, Mr. Pronto found Plaintiff very limited in her ability to bend and climb (R. at 404). Two years later, on July 7, 2003, Dr. Gordon opined that Plaintiff was very limited in her ability to bend and climb (R. at 406). Even the disability analyst found that Plaintiff could only occasionally climb, balance, stoop, kneel, crouch, and crawl (R. at 794-95). Thus, the ALJ erred in failing to include any postural limitations in the RFC.

Based on the foregoing, the Court recommends remand to allow the ALJ an

opportunity to re-evaluate the medical evidence in determining Plaintiff's RFC. Most notably, the ALJ must appropriately consider the opinions from Plaintiff's examining sources.

### c) The ALJ Must Consider All Impairments in Combination

Plaintiff argues that the ALJ failed to evaluate her limitations in combination with one another. Plaintiff's Brief, pp. 23-24. Specifically, Plaintiff refers to the limitations resulting from her "sleep disturbance, fatigue and chronic headaches." Plaintiff's Brief, p. 23.

The ALJ is instructed to consider impairments of which a claimant has complained or the ALJ has received evidence. See 20 C.F.R. § 404.1512 ("We will consider only impairment(s) you say you have or about which we receive evidence."). The ALJ must also consider those impairments in combination. 20 C.F.R. §§ 404.1523, 416.923 ("In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.").

Plaintiff testified that she has migraine headaches (R. at 607, 609). Plaintiff also indicated in disability reports that she would "wake up several times at night" (R. at 705) and required rest periods to work (R. at 674). According to Dr. Friedman, the non-examining review psychologist, Plaintiff's fatigue was most likely due to her fibromyalgia (R. at 839).

In his decision, the ALJ mentioned Plaintiff's testimony concerning "pain in her

head" (R. at 21). Thus, the Court will not go so far as to find that the ALJ failed to consider this impairment. However, the ALJ failed to mention Plaintiff's fatigue or sleep disturbance in his decision. There is also no indication that the ALJ considered any of these impairments, including Plaintiff's headaches, in combination. Thus, on remand, the ALJ must consider, in combination, all impairments that Plaintiff alleges limit her ability to work.

## IV.  Conclusion

Based on the foregoing, the Court recommends that the Commissioner's decision denying disability benefits be REMANDED for further proceedings in accordance with this recommendation and pursuant to sentence four of 42 U.S.C. Section 405(g).

Respectfully submitted,

_____
Victor E. Bianchini
United States Magistrate Judge

DATED:   September 1, 2009

**ORDER**

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**<u>Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.</u>**
*Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985);   *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989);   *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir.1988).

Let the Clerk send a copy of this Report and recommendation to the attorneys for the Plaintiff and the Defendants.

SO ORDERED.

*[signature]*

Victor E. Bianchini
United States Magistrate Judge


DATED:     September 1, 2009